UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES INGRAM, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 05cv1985 (RJL) |
| vs. | * | |
| | * | |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**HOWARD UNIVERSITY HOSPITAL'S REPLY TO PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO SUBSTITUTE THE UNITED STATES AS THE PROPER FEDERAL DEFENDANT**

Howard University Hospital, one of the Defendants, by and through its attorneys, Hugh W. Farrell and Eric W. Gunderson, Hugh W. Farrell & Associates, replies to Plaintiff's Opposition to Federal Defendant's Motion to Substitute the United States as the Proper Federal Defendant and states as follows:

**I. OVERVIEW**

The United States has filed a motion seeking to substitute it as the proper federal defendant in place of Willie J. Banks, M.D. ("Dr. Banks"), Kenyatta Norman, M.D. ("Dr. Norman"), Alberto Gonzales, Attorney General, and the United States Department of Justice. In support of such relief, the United States has asserted that Willie J. Banks, M.D., and Kenyatta Norman, M.D., at the times of the treatment at issue, were federal employees and have been sued for common law tort claims arising out of actions taken within the scope of their employment. Dr. Banks' and Dr. Norman's status as federal employees is certified by Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office. Accordingly, pursuant to

applicable provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et. seq* ("FTCA"), the United States seeks to have it substituted as the exclusive federal defendant.

Plaintiff has now opposed the United States' motion to the extent is seeks to substitute the United States as the proper defendant for Dr. Norman. Plaintiff bases his opposition on the misguided notion that Dr. Norman, a physician who was participating in the residency program at Howard University Hospital and was training at VA Medical Center of Washington, D.C. (hereinafter "VAMC") under the supervision of its staff at all times relevant to the claims asserted, was not an employee of the United States at that time. Plaintiff, however, falls woefully short of overcoming his burden of rebutting the *prima facie* evidence of Dr. Norman's federal employment established by Attorney Contreras' certification. Not only do the written agreements between Howard University Hospital and VAMC unequivocally provide that VAMC is fully responsible for all treatment provided to patients treated at its facility and that VAMC assumes all control over the Howard University Hospital residents assigned to the facility and providing services at its facility, but they expressly provide that residents are deemed medical care employees of the VA for purposes of the FTCA when providing services to patients at the facility. Moreover, the case law is clear that student physicians providing treatment at a federal medical facility, like VAMC, pursuant to a residency training program are federal employees of the medical facility, not independent contractors, for purposes of the FTCA. It is incontrovertible, then, as more fully explained below, that Dr. Norman was an employee of VAMC at all times she was allegedly providing services to Plaintiff. For this reason, and for the

other reasons cited in the United States' Motion, the Motion should be granted and the United States should be substituted in place of all federal defendants, including Dr. Norman.[1]

## II. ARGUMENT

A. **PLAINTIFF IS UNABLE TO REBUT THE UNITED STATES' *PRIMA FACIE* EVIDENCE THAT DR. NORMAN WAS AN EMPLOYEE OF THE UNITED STATES AT ALL TIMES RELEVANT TO THIS ACTION – THE AGREEMENTS BETWEEN HUH AND VAMC UNEQUIVOCALLY PROVIDE THAT THE VAMC ASSUMED ALL CONTROL AND SUPERVISION OVER DR. NORMAN AND HER TREATMENT OF PLAINTIFF.**

Plaintiff correctly acknowledges that a certification of federal employment, as that provided by Attorney Contreras certifying that Dr. Norman was an employee of the United States, is *prima facie* evidence of federal employee for purposes of the FTCA and that it is Plaintiff's burden to present evidence to rebut the *prima facie* proof of Dr. Norman's federal employment. In an attempt to rebut this *prima facie* evidence, Plaintiff presents various agreements between HUH and VAMC and goes on to make the conclusory assertion that these agreements make it evident that VAMC did not have control over Dr. Norman's treatment of patients. Plaintiff, however, does not cite one section to support this unfounded claim and wholly ignores numerous sections of the agreements that completely contradict his assertion.

### 1. School of Medicine Agreement

The School of Medicine Agreement between VAMC and HUH (attached to Plaintiff's Opposition), is the principal agreement between VAMC and the HUH which authorizes VAMC to affiliate with Howard University Hospital for purposes of pursing enhanced patient care,

---

[1] In addition, because Plaintiff's claim against HUH is based solely on the theory that Dr. Norman was an employee of HUH and, thus, HUH is vicariously liable for her alleged negligence, HUH is filing along herewith a motion to dismiss seeking to have it dismissed from this action based on the fact that it had no control or supervision over Dr. Norman's treatment of Plaintiff while he was a patient at VAMC. The United States, then, should be left as the sole defendant in this FTCA suit.

education and research. Pursuant to the terms of the School of Medicine Agreement, VAMC assumes supervision and control over physicians assigned to VAMC pursuant to HUH's residency program and retains full responsibility for the care of patients at its facility. Specifically, the Agreement provides in pertinent part:

> VA and the affiliated school have a shared responsibility for the academic enterprise. The school accepts primary responsibility for the integrated education programs conducted with VA; and VA retains full responsibility for the care of patients, including administrative and professional functions pertaining thereto.

(See School of Medicine Agreement, p. 4). The Agreement goes on to outline those responsibility of HUH and those of VAMC. HUH retains responsibility for overseeing the administration of the residency program, such as nominating residents for the program and overseeing planning and budgeting issues. See School of Medicine Agreement, Section 1.

VAMC, however, assumes responsibility for overseeing the operation and management of the facility and the medical treatment of patients under its care. See Sections 2-4. This includes, in the case of VAMC staff and attending staff physicians, supervising residents and accepting responsibility for patients in their charge. See Sections 6 and 7.

### 2. Clinical Education Agreement

The Clinical Education Agreement between VAMC and HUH (attached to Plaintiff's Opposition), is the corollary agreement between VAMC and HUH concerning more specific implementation of HUH's residency program at VAMC. While pursuant to the terms of the Clinical Education Agreement HUH assumes responsibility for "planning and implementation of the educational component of the residency program," see Clinical Education Agreement, Section 1(a), such as maintaining the necessary records for the student's participation in the

4

program, see Section 1(e), it is VAMC that retains full responsibility for the care and treatment of patients and the supervision of students assigned to its facility.

>Specifically, the Clinical Education Agreement provides that:

>>The parties agree to identify one or more attending level physicians, "supervising physician(s)," who are active members of the [VAMC] medical staff, **to provide clinical supervision for each student while training at the [VAMC]**. The supervising physicians will assure that each student has a consistent and appropriate level of clinical and administrative supervision. The supervising physicians will review and **direct the student's work and services** from a clinical perspective;

See Section 2(b).

>In addition, the Agreement provides that it is the responsibility of VAMC to:

>>Retain sole authority and responsibility for the care and treatment of its patients. The [VAMC] will assure that each patient has an attending physician of record who holds unrestricted clinical privileges at the [VAMC];

See Section 2(g).

>Perhaps most evident of VAMC's control over student physicians providing services at its facility, the Agreement gives VAMC the authority to essentially discharge a student from its facility by providing that "[VAMC] reserves the right to direct [HUH] to withdraw any student whose health, conduct, or performance is a detriment to patients' well-being or to the achievement of the purposes of this Agreement." See Section 2(i).

>Finally, and perhaps most importantly, the Clinical Education Agreement expressly states:

>>When providing professional services covered by this agreement, protection of Howard representatives and residents of Howard from personal liability when furnishing professional services covered by this agreement while at the [VAMC] will be that which is provided under the Federal Tort Claim Act as implemented by 38 U.S.C. § 7316 **and such person shall be considered medical care employees of the VA**.

5

See Section 2(l) (emphasis added).

Accordingly, it is clear that the parties intended that residents, like Dr. Norman, were to be employees of VAMC. These agreements, then, completely contradict Plaintiff's unsubstantiated assertion that the agreements rebut the United *States' prima facie* evidence that Dr. Norman was an employee of VAMC. Instead, these agreements unequivocally corroborate such evidence. Plaintiff, therefore, has fallen far short of overcoming his burden of rebutting the United States' *prima facie* evidence of Dr. Norman's status as a federal employee.

> **B. THE CASE LAW IS UNANIMOUS THAT STUDENT PHYSICIANS PROVIDING SERVICES AT A FEDERAL MEDICAL FACILITY ARE EMPLOYEES OF THE FEDERAL FACILITY AND ARE NOT INDEPENDENT CONTRACTORS FOR PURPOSES OF THE FEDERAL TORT CLAIMS ACT.**

Plaintiff cites several cases for the proposition that a physician contracted to provide services at a federal medical facility, like the VAMC, is an independent contractor and not an employee, *see Broussard v. United States*, 989 F.2d 171 (5th Cir. 1993); *Carrillo v. United States*, 5 F.3d 1302 (9th Cir. 1993); *Leone v. United States*, 910 F.2d 46 (2nd Cir. 1990*); Bernie v. United States*, 712 F.2d 1271 (8th Cir. 1983); *and Lurch v. United States*, 719 F.2d 333 (10th Cir. 1983), but Plaintiff's reliance on these cases is misplaced for the simple reason that they apply to attending physicians, not physicians in training at the facility in a residency program. Cases have consistently held that residents, as opposed to attending physicians, are in fact federal employees when providing services at a federal medical facility because of the substantial control the facility has over the resident's treatment of patients at the facility.

In a case strikingly similar to the case at bar, the United States Court of Appeals for the Seventh Circuit in *Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995), held that a resident physician assigned to the North Chicago VA Medical Center was an employee, not an independent

contractor, of the VA Medical Center for purposes of the FTCA and granted the United States' motion to substitute the United States as the proper defendant. In *Ezekiel*, the plaintiff filed suit against the resident for injuries suffered as a result of the resident's alleged failure to properly dispose of a contaminated needle. *Id.* at 895. Just like in the case at bar, the United States sought under the FTCA to have it substituted for the resident as the exclusive defendant relying on the Attorney General's certification that the resident was a federal employee acting within the scope of his employment. *Id.* at 896. Ultimately the district court ruled that the resident was a federal employee at the time of his alleged misconduct. *Id.* On appeal to the Seventh Circuit, the Court of Appeals explained that "[t]he sole issue on appeal is whether Dr. Michel, a licensed physician participating in a psychiatric rotation residency program at the VA hospital and receiving no compensation directly from the VA hospital, was a federal employee within the meaning of the Federal Tort Claims Act." *Id.* at 897. The Court noted that on appeal the plaintiff's sole contention, like the Plaintiff here, was that Dr. Michel was never a federal employee, but rather worked at the VA Medical Center as an independent contractor. *Id.* at 899. In fact, the plaintiff in Ezekiel relied on the same cases that Plaintiff is relying on here (e.g. *Carrillo, Leone, Bernie, supra*). *Id.* at 902.

The Court of Appeals, however, rejected the plaintiff's argument that the resident was an independent contractor and upheld the district court's ruling that he was an employee. The Court of Appeals explained:

> Dr. Michel was a resident physician in training, and not a board certified psychiatrist. His principal role at the VA hospital was to receive specialized training in the field of psychiatry and experience in performing patient care assignments. **As such, Dr. Michel was certainly subject to a higher degree of supervision and control by the VA hospital medical staff than would a private physician acting as an independent contractor under contract with the government.** *See, e.g., Costa v. United States*,

7

>845 F. Supp. 64, 66 (D.R.I. 1994) (applying the "strict control" test and finding resident physicians to be under the direct supervision and control of attending VA physicians for purposes of invoking immunity under the FTCA). Dr. Michel's relationship to the hospital is clearly distinguishable from that of a physician under contract with the government to provide medical services: the latter is hired to perform a particular service required by a government medical facility. **Notably, none of the cases cited by the plaintiffs involve a resident physician in training. Indeed, while we found the "strict control" test inappropriate in determining a licensed physician's status because of the physician's independent ethical obligations, we recognized in** *Quilico* [*v. Kaplan*, **749 F.2d 480 (7th Cir. 1984)**] **that "residents in training programs performing specific medical services may very well be considered under the direct technical and professional supervision and control of the staff."** *Id.* at 484 n. 10. … The Chicago Medical School, the co-sponsor of Dr. Michel's psychiatric residency program, considered Dr. Michel to be under the direct supervision and control of the VA hospital's medical staff or any other approved hospital while serving in that facility's training program. The VA hospital as well as other hospitals participating in the Chicago Medical School's residency training program also considered residents such as Dr. Michel to be supervised employees. … As part of the training, resident physicians must follow the directions of the hospital's qualified medical staff and defer to the judgment of their superiors. We recognize that resident physicians regularly are called to make independent decisions both in the presence and during the absence of supervisory physicians. However, this does not alter the training and educational nature of their employment. … **In short, even under the "strict control" test, Dr. Michel qualifies as an "employee of the Government" for purposes of the FTCA. Accordingly, the district court properly granted the government's motion to substitute.**

*Id.* at 903-04 (emphasis added); *see also Costa v. United States*, 845 F. Supp. 64, 66 (D.R.I. 1994) (finding resident physicians to be employees of the Davis Park VA Hospital in light of the direct supervision and control of the residents by attending VA physicians for purposes of substituting the United States as the proper defendant under the FTCA).

8

Accordingly, the case law further supports the United States' and HUH's position that Dr. Norman, a resident at VAMC at the time of her alleged negligent acts, was an employee of VAMC, not an independent contractor.

### III.  CONCLUSION

In light of the foregoing arguments and cited authorities, the United States' Motion to Substitute the United States as the Proper Federal Defendant should be GRANTED.

Respectfully submitted,

HUGH W. FARRELL & ASSOCIATES

*s/ Hugh W. Farrell*
_____
Hugh W. Farrell #375515
8840 Stanford Boulevard
Suite 2000
Columbia, Maryland 21045
301-596-7222


*s/ Eric W. Gunderson*
_____
Eric W. Gunderson #26319
8840 Stanford Boulevard
Suite 2000
Columbia, Maryland 21045
301-596-7222

*Attorneys for Defendant Howard University Hospital*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of August, 2006, an electronic copy of the foregoing document was sent via electronic mail to all counsel of record via the Court's CM/ECF system.

*s/ Eric W. Gunderson*
_____
Eric W. Gunderson #26319